ORIN ORCUTT *v.* THE ESTATE OF COLES R. COOK.

*Husband and Wife. Married Women. Evidence. Agency.*

Where the work which the wife does, or the business she carries on, gives notice to all, by its very character and nature, that she is authorized by her husband to carry it on, and is the party to deal with, the case comes within the statute of 1858, (G. S., p. 327, §27,) which provides that married women may testify for or against their husbands in certain cases.

The hiring out of a minor son to labor is not a business of such character; and in the absence of all proof of authority to the wife to make the contract, or of ratification of it, by the husband, the wife was held to be an incompetent witness.

The effect of ratification alone not decided.

THIS was a claim for services of a minor son rendered to Coles R. Cook during his lifetime.

The case was referred, and the referee reported that the first witness introduced by the plaintiff was Almira Orcutt, the wife of the plaintiff. She was objected to on the part of the defendant, on the ground that she was not such an agent of her husband as was contemplated by the act of 1858, and therefore could not be admitted as a witness. The plaintiff's counsel contended that she was a competent witness, and could be admitted under the rulings of the courts. It was decided to admit her testimony with the understanding that it should, together with the objections, be reported to the court. It appeared from the testimony of the witness that Coles R. Cook came

Orcutt *v.* Est. of Cook.

to the house of the plaintiff, and the witness bargained with him that her son William W. Orcutt, then twelve years of age, should go and live with him until he was of age, at a certain price agreed upon. After the boy had lived with Cook about three years, Mrs. Cook, the wife of Coles R. Cook, died.

Mr. Cook married again in the fall of 1856. The boy, William, stayed with Cook until spring, and then came home and said he was not satisfied; witness told the boy he must go back, and witness went with him. Mr. Cook said he was glad he came back, and he would make a new bargain with him; said he would give him a colt worth $50. if he stayed until he was twenty-one, and $100. in money; and if he stayed only through the summer, he would do what was right about it. Mr. Cook brought the boy, William, home the last week in November, and said he had got to bring the boy home or carry the woman off; said he was a good boy and he would get him some clothes; he afterwards brought him some cloth for a pair of pants and a coat; Cook said he would do what was right about his wages. It appeared also from the. testimony of the witness that the plaintiff, Orin Orcutt, the husband of the witness, was about home at the time said bargains were made.

The evidence of a new bargain rests almost entirely with the testimony of Mrs. Orcutt, the wife of the plaintiff, and if the court are of the opinion that her testimony is inadmissible, there would be no new bargain whereby the plaintiff could claim any pay for the services of his son, unless he continued to live with Cook until he was of age, and therefore the referee finds for the defendant his costs. But if the testimony of Mrs. Orcutt is admissible, and a new bargain was made when her son returned to live with Mr. Cook, on or about the first of April, 1857, then the referee finds there will be due the plaintiff for the labor of his son the sum of forty-seven dollars, with interest to be added from the 1st day of December, 1857.

The court decided upon the report of the referee, at the December Term, 1862, PIERPOINT, J., presiding, that the wife of the plaintiff was his agent, and that her testimony was properly admitted, and rendered judgment for the plaintiff in the sum reported,—to which the defendant excepted.

*Eldridge* and *Fisher*, for the defendant.

*Horatio Needham*, for the plaintiff, cited to the point of the existence of an agency between the plaintiff and wife,—2 Stark. Ev. 33 ; *Cairnes* v. *Bleecker*, 12 Johns. 300 ; *Briden* v. *Dubarry*, 14 Serg. & Rawle, 27 ; *Amory* v. *Hamilton*, 17 Mass. 103.

ALDIS, J. The statute of 1858 enables married women to testify for and against their husbands in certain cases, viz : 1st, in actions on policies of insurance of property, so far as relates to the amount and value of the property injured ; 2d, in actions against carriers, so far as relates to the loss of property and the amount and value thereof ; 3d, in all matters of business transactions, where the transaction was had and conducted by such married woman as the agent of the husband.

The three classes of cases show the intent of the legislature to admit the testimony of the wife where from the nature of the case the wife would have a better knowledge of the matter than the husband, and where not unfrequently the husband would have no knowledge and no means of proof or redress without her testimony.

Thus the wife has the better and in some respects the exclusive knowledge of household articles of furniture, clothing, &c., destroyed by the burning of a dwelling house. So of the contents of her trunks lost in travelling.

The third class—business transactions conducted by the wife as the agent of her husband—must by reasonable construction include those matters of business *expressly* confided to her agency ; those which are usually entrusted to the wife alone to manage for the husband ; and all those kinds of business which the wife carries on as the chief superintendent and manager. Thus where the wife is usually entrusted with the purchase of provisions and clothing for the family—meats from the butcher, flour, sugar, &c., from the grocer, clothing for the children, &c., it is obvious that her knowledge of such transactions must to a great extent be all the evidence the husband can have, and comes therefore within the intent of the act. So where a wife carries on business as the head manager thereof,— as dress-maker, milliner, school-teacher ; or where her labor is the meritorious cause that earns the money, as by washing, sewing, &c. ; then the reason of the rule would seem equally to apply. In all such cases he who deals with the wife treats her as the principal in

the transaction, does not deem it necessary to inform the husband of the bargain or ask his consent to it, but considers that the wife represents the husband. From the husband's course of conduct in the particular kind of business, or from the usual course and custom of people generally in such matters, the person so dealing with the wife has the right to consider that she is, *pro hac vice*, the agent of the husband, and what she agrees to will bind him. Hence in such business what she knows she ought to be allowed to testify to.

The difficulty is to draw the line. Some women are entrusted by their husbands with the making of bargains and the transactions of business to a much greater extent than others. Where a special, direct and express authority is given to the wife, is exercised by her, and he who deals with her acts upon the same basis, then there is no reason why she should be excluded. She is made the express agent of the husband. Nor would it seem to be within the letter or spirit of the law that the wife should be excluded because she advises with her husband on the subject and he in fact has a knowledge of the trade that his wife is making for him. The statute does not confine the admissibility of her testimony to cases where her husband is absent, or where from necessity she has to act as his agent. It includes all business transactions had and conducted by her as the agent of her husband. The words of the statute are general, to protect the husband's interests by enabling him to use his wife's evidence in cases when she in fact acts for him, and the person who deals with her knows, or must reasonably and fairly understand, that he is dealing with her as agent of her husband. Where the authority is express to the wife and the other party knows it, it is plainly within the statute.

Where by the usual practice of the country the wife acts in such matters for the husband, the person dealing with the wife is supposed to know such general custom and to act upon it. But in such case the custom must be a common, general, well-known custom— like other customs which people are bound to take notice of.

Where the work she does, or the business she carries on, gives notice to all, by its very character and nature, that she is authorized by her husband to carry it on, and is the party to deal with, it is within this statute.

Orcutt *v*. Est. of Cook.

In the case at bar the husband and wife were living together—the husband was at home at the time the deceased, Cook, came to hire his son. The hiring out of a son to labor is not a business usually entrusted to the wife by the husband. There is no such custom. Usually the husband (though he may advise with the wife) makes the bargain himself. Hence the wife derives no authority from custom. No express authority is shown. The husband did not say to Cook, "Trade with my wife, and whatever she agrees to I will abide by." On the contrary it would seem that he could not have known of the new bargain, or that it was contemplated, till after it was made. Cook first suggested it to the wife when she brought the boy back to continue under the first agreement, The nature of the business confers no special right, no power generally understood and acted on, enabling the wife to represent the husband. If it had been a daughter whom the mother had hired out to service, it might perhaps have been more doubtful; though as to that we need express no opinion.

It stands upon this point—the wife did in fact make the new bargain, assuming to act for her husband, and without consulting him. Cook made the bargain with her alone. There is no proof of any authority given her by her husband to make the bargain. It is clear that he might have refused to be bound by it when it came to his knowledge. He could be bound by it only by a subsequent ratification of it.

1. The first question that arises therefore is this : The wife, having no authority as agent of her husband, acts *as* his agent; and the other party deals with her alone and as his agent; if the husband subsequently ratify the act of his wife, is she admissible as a witness in a suit brought by the husband on the contract? Upon this point a part of the court think that to make her a witness by the statute it is necessary not only that the transaction must be had with and conducted by her as the agent of her husband, but that she must, *in fact, at the time*, be his agent. But upon this point there is no such concurrence of opinion as to enable us to express an opinion.

2. But we concur in the opinion, that there is nothing to show any knowledge of the new bargain, or any ratification of it by the husband, till long after the controversy arose, The boy's staying

with Cook with his father's knowledge might as well have been under the original contract as the new one, and that is all that can be claimed to show ratification.

As the case stands, the proof of agency is wholly wanting as to the new contract. It is true that the bill of exceptions states that the court found she was the agent of her husband. But we see no evidence as to the new contract tending to show that.

As the plaintiff can only recover (if at all) on the new contract, and as to that we find no proof of agency, the judgment must be reversed, and judgment rendered for the defendant for his costs.